# William Stoneback, Guardian, etc., Plff. in Err. *v.* Thomas Iron Company.

If a bridge over a railroad track is built in a safe and substantial manner, and at a height above the tracks sufficient, at the time it was built, to admit of the free use of the road, the mere fact that the bridge became dangerous because higher cars were brought into use by the railroad company, so that a brakeman required by his duty to be upon the top of a car could not pass under the bridge without in some instances lying down, will not render those maintaining the bridge liable to damages for the death of such brakeman who was knocked from the car and killed, if they had no notice of the change in the height of the cars.

A railroad is not a public highway in such sense as to render an obstruction thereto a public nuisance, for the maintenance of which one is liable, wholly irrespective of the question whether he knew it to be a nuisance or not.

Where several such bridges were side by side, and were well known to the deceased, the facts that when the train approached the bridges it was daylight; that the deceased and a fellow brakeman were seated on top of one of the cars facing the bridges; that they passed all but one of the bridges in safety; that his companion passed all in safety, and the one by which he was struck was the last; that the men were not engaged in the performance of any duty, but were sitting idly together, in full view of the danger, with nothing to distract their attention and nothing to do but to avoid the danger,—constitute such evidence of contributory negligence as will defeat a recovery of damages for the death of deceased.

(Decided March 22, 1886.)

Error to the Common Pleas of Northampton County to review a judgment of nonsuit, in an action for damages for personal injuries resulting in death. Affirmed.

The facts of the case appear in the opinion of the court below, by SCHUYLER, J., as follows:

To entitle the plaintiff to recover in this suit the evidence must show negligence on the part of the Thomas Iron Company, either in the erection or maintenance of the bridge where William Stoneback met his death. This much is conceded by the learned counsel for the plaintiff. The facts bearing upon this branch of the case are as follows: the bridge in question was built by the Thomas Iron Company in the year 1868. There is no complaint that it was not well and substantially built; nor that it was not high enough above the track of the railroad at that time to admit of the free use of the track without danger

to anyone. It is clear, therefore, that negligence cannot be imputed to the Thomas Iron Company so far as the erection of this bridge is concerned.

But in the course of time higher cars came into occasional use on the railroad, some of which were so high that a brakeman sitting on the top of one of them, where his duty might require him to be, could not pass under the bridge without stooping and in some instances lying down. This change in the height of the cars was the work of the Lehigh Valley Railroad Company exclusively. It is not pretended that any notice of the change was ever given to the Thomas Iron Company, nor is there any evidence in the case from which a jury could justly infer that the Thomas Iron Company had any knowledge even that the change had been made. The change was but a few inches, a foot or thereabouts, at most, in the height of the cars, and in large bodies like box freight cars moving swiftly backwards and forwards it might easily have escaped the company's observation.

Now, upon this state of facts, the plaintiff is seeking to mulct the Thomas Iron Company in heavy damages for maintaining this bridge. Clearly this would be unjust. The injustice of it would possibly be more manifest, to the lay mind at least, if this bridge had been erected and maintained by one of the good farmers of our county whose farm had been cut in two by the Lehigh Valley Railroad and he, instead of a corporation, had stood here as defendant.

The learned counsel for the plaintiff, as if recognizing the insufficiency of the evidence to convict the Thomas Iron Company in fact, argued, at great length and with much apparent earnestness, to convince me that the company is, theoretically as it were, guilty of negligence. The argument was that the Lehigh Valley Railroad is a public highway, that this bridge is an obstruction to the highway and consequently a public nuisance, for the maintenance of which the defendant is liable, wholly irrespective of the question whether the defendant knew it to be a nuisance or not.

If the premises are admitted, the conclusion would probably follow. Nor can it be denied that railroads are public highways, but they are so only in a modified sense. They are declared to be public highways by act February 19, 1849 (Purdon's Digest, 1221, § 41), but only for the conveyance of

passengers and the transportation of freight, subject to such rules and regulations as the president and directors may prescribe and direct. For all other purposes and in all other respects the track and roadbed of a railroad company are strictly private property. So essentially true is this that, if a stranger without permission sets foot on either except at a public crossing, he at once becomes a trespasser. This is horn-book law.

Before leaving this branch of the case I would state that in Brossman v. Lehigh Valley R. Co. 113 Pa. 490, 57 Am. Rep. 479, 6 Atl. 226, I have endeavored to show that the railroad company was not liable to its employees for the maintenance of a bridge in all respects like the one I have just been considering. Will it be pretended that the Thomas Iron Company, a mere stranger, owes a higher measure of duty to the employees of the Lehigh Valley Railroad Company than the Lehigh Valley Railroad Company owes to them itself?

The plaintiff's case is, I think, equally weak in another aspect of it. It is a familiar legal principle that in actions for damages for an injury alleged to be the result of the negligence of the defendant, the plaintiff cannot recover if the evidence discloses the fact that the negligence of the person injured contributed to the injury. Tested by this principle, I think it will be found that the present plaintiff has failed to make out a case. The following is the evidence bearing upon the question of contributory negligence now under consideration:

In addition to the bridge by which Stoneback was struck and killed, the Thomas Iron Company maintained three other bridges, all four bridges being within a space of about 300 yards. Stoneback knew these bridges well, for, during a year and more immediately preceding his death, he had been in the employ of the Lehigh Valley Railroad Company as brakeman, in which capacity he had passed under them many hundred times, in storm and shine, both by day and night. He lost his life on the morning of June 30, 1879. The train on which he was employed had gone up the road to Mauch Chunk from Easton, the night before, and on its return trip had stopped at a water tank about 10 yards above the upper of the four bridges. The last that was seen of Stoneback alive by any witness at the trial, was just as the train was pulling out from the water tank to resume its trip to Easton. He was then sitting on the top of a high box car with John Bishop, a fellow brakeman. The

men were sitting side by side, both facing the bridges, the first of which was but a few feet ahead of them. This was between 5 and 6 o'clock in the morning, and the bridges were plainly visible. The first three bridges were passed without accident, but in passing under the last bridge, which was not the lowest, the first bridge being 1 inch lower, Stoneback was struck by the bridge; his companion passing under this bridge in safety. When last seen these men were not engaged in the performance of any duty, but were sitting idly together in full view of the danger ahead of them, with nothing to distract their attention and with nothing to do except to avoid the danger.

Now, how did it happen that of these two men, both of them with precisely the same opportunities of escape, the one was taken and the other left? The inference is irresistible that the one was careful and the other not. True it is that the love of life and the instinct of self-preservation furnish the highest motive for care, and that they stand for proof of care, but this is only until the contrary appears. Cleveland & P. R. Co. v. Rowan, 66 Pa. 399.

Here the contrary does appear most conclusively, for it is most manifest that, if Stoneback had used care, he, like his fellow brakeman who did use care, would have been saved. But it is said that he may have stooped and by a mistake of judgment may not have stooped low enough.

I grant, with the instinct of self-preservation as an element of proof on the side of the plaintiff, that the jury would have been justified in finding that Stoneback lost his life by a mistake of judgment, but I do not think this would help the plaintiff's case. A mistake of judgment under such circumstances, in my opinion, would be in itself an act of carelessness. It could have resulted from nothing else. With the knowledge that Stoneback had, with the experience he had, with the ample time and opportunity he had for forming a correct judgment, an error in judgment would be wholly inexcusable.

In Northern C. R. Co. v. Husson, 13 W. N. C. 361, John Husson lost his life from a mistake of judgment under far less favorable circumstances than existed here, and yet the court says: "It is beyond question that the accident only happened because the deceased failed to keep his head at least as low as the floor of the car. This was an omission which was the fault of the deceased exclusively, and in such circumstances it is dif-

ficult to understand how the defendant can be held responsible without uprooting the most familiar principles of the law."

The remark of Judge MITCHELL in Pennsylvania R. Co. v. Werner, 89 Pa. 62, that, "if a man has got himself, without negligence, into a position of danger, he is not responsible if he makes a mistake of judgment in getting out," is predicated on a state of facts wholly different from those with which we are now dealing.

Much more germane is the language of AGNEW, J., in Pennsylvania R. Co. v. Goodman, 62 Pa. 338, where he says: "There cannot be a doubt that the event happened, either from the unruliness of the horse, or from the most culpable negligence. It was either his misfortune or his fault, for neither of which was the company liable."

But it is said that this case should have been submitted to the jury, and the learned counsel for the plaintiff have cited a number of authorities on this point, of which Pennsylvania R. Co. v. Weber, 76 Pa. 157, 18 Am. Rep. 407, is probably the extreme type. In that case the question was whether Weber had stopped and looked for approaching trains before passing upon the railroad track. There was nothing in the plaintiff's evidence to conclude the possibility that he may have done so, although it strongly tended the other way. It was his duty to have done so, and the legal presumption was that he did his duty. The question was, therefore, properly submitted to the jury.

Here, too, the presumption is that Stoneback did his duty, but this presumption must give way to the actual truth. Pennsylvania R. Co. v. Weber, 76 Pa. 157, 18 Am. Rep. 407.

His duty was, as has been seen, to stoop low enough to pass under the bridges in safety. The admitted fact is that he did not stoop low enough to pass under the bridge in safety. The presumption must therefore give way. It is possible that at the time the bridge was reached, by some sudden call to duty or in some other way, without fault on his part, Stoneback may have been placed in a position where he could not by the exercise of the greatest diligence have avoided the bridge; but there was no evidence that such was the fact, and it would have been clear error to allow the jury to so find without evidence. There is no presumption that he changed his position. On the contrary, the legal presumption is that at the time he was struck by the bridge he was in the same position as when last seen alive.

*Henry W. Scott, W. S. Kirkpatrick,* and *W. Beidelman,* for plaintiff in error.—Knowledge or notice is not necessary to be shown where the defect or danger is the direct result of the act of the party sought to be charged. The fact that a telegraph wire is found swinging across a public way at such a height as to obstruct and endanger ordinary travel is, in itself, unexplained, some evidence of neglect on the part of the company, whose duty it is to keep it in proper and safe position, and should have been submitted to the jury. Thomas v. Western U. Teleg. Co. 100 Mass. 156.

Even when the defect or dangerous condition of a place is the act of a third party, as in the case of an obstruction or opening in a highway, or on the premises of the party sought to be held by another, knowledge or notice is presumed after a reasonable lapse of time. Harrison v. Collins, 86 Pa. 153, 27 Am. Rep. 699; 2 Dill. Mun. Corp. 2d ed. p. 921, note 1.

A railroad is declared by law to be a public highway. See Act of February 19, 1849 (P. L. p. 86, § 18), which by the Act of March 8, 1856, § 3 (P. L. 96), is made applicable to the Lehigh Valley Railroad Company.

The defendant would be indictable for a nuisance if it maintained a bridge that obstructed the transportation of freight or endangered the lives of those whose duty it was to conduct and take charge of freight transportation.

The limitation of the uses of a highway does not take away its character and protection as a highway. There may be highways for use only by foot passengers, and yet an obstruction would be a nuisance or an actionable tort.

Even if the erection of the bridge in 1868 did not then obstruct or endanger, yet if afterwards, by the expansion and improvement in modes of transportation, it subsequently did obstruct or endanger the use of the railroad considered as a highway, the defendant would be liable.

In Dugan v. Bridge Co. 27 Pa. 303, 67 Am. Dec. 464, the defendant was empowered by act of the legislature to build a bridge over a navigable stream provided it did not obstruct its navigation. At the time the bridge was built it did not interfere with the navigation of the river. Between that and forty years afterwards, by reason of change in the stream, and the increase and development of its navigation, it did become an obstruction. It was held that the bridge company was liable.

As the love of life and the instinct of self-preservation are the highest motives for care in any reasoning being, they will stand for proof until the contrary appears.  Allen v. Willard, 57 Pa. 374; Pennsylvania R. Co. v. Werner, 89 Pa. 65; Cleveland & P. R. Co. v. Rowan, 66 Pa. 399; Lehigh Valley R. Co. v. Hall, 61 Pa. 361; Pennsylvania R. Co. v. Weber, 76 Pa. 157, 18 Am. Rep. 407.

What constitutes negligence in a given exigency is generally a question for the jury, and not for the court.  Negligence is the want of ordinary care under the circumstances; the standard is, therefore, necessarily variable.  No fixed rule of duty can be formed which can apply to all cases.  A course of conduct justly regarded as resulting from the exercise of ordinary care under some circumstances would exhibit the grossest degree of negligence under other circumstances; the opportunity for deliberation and action and many other circumstances of a like nature affect the standard of care which may be reasonably required in a particular case.  When the standard shifts, not according to any certain rule, but with the facts and circumstances developed at the trial, it cannot be determined by the court, but must be submitted to the jury.  Schum v. Pennsylvania R. Co. 107 Pa. 10, 52 Am. Rep. 468.  See also McCully v. Clarke, 40 Pa. 399, 80 Am. Dec. 584; Germantown Pass. R. Co. v. Walling, 97 Pa. 62, 39 Am. Rep. 796.

The plaintiff's general acquaintance with the obstruction or defect in the highway will not necessarily prevent a recovery for injuries received on this account, if, under the circumstances, he might still, in the exercise of ordinary prudence, be unaware of his proximity to it, as, by some sufficient cause, having his attention distracted from it.  2 Thomp. Neg. 1204, citing George v. Haverhill, 110 Mass. 506; Pollard v. Woburn, 104 Mass. 84; Wheeler v. Westport, 30 Wis. 392; Bateman v. Ruth, 3 Daly, 378.

A mere miscalculation as to one's proximity to the dangerous part of a public highway will not have the effect to establish conclusively the want of care.  2 Thomp. Neg. 1204, citing Blood v. Tyngsborough, 103 Mass. 509.  See also Pollard v. Woburn, 104 Mass. 84; Wharton Neg. 2d ed. §§ 219, 304; Pennsylvania R. Co. v. Werner, 89 Pa. 59.

Nor can it be said that the prior knowledge of the decedent of the existence of the bridge and the voluntary encountering

of the passage under it, in the course of his employment, was contributory negligence, *per se,* justifying a withdrawal of the case from the jury. Lyman v. Amherst, 107 Mass. 339; Whittaker v. West Boylston, 97 Mass. 273; Patterson v. Pittsburg & C. R. Co. 76 Pa. 393, 18 Am. Rep. 412; Lund v. Tyngsboro, 11 Cush. 563, 59 Am. Dec. 159; Thomas v. Western U. Teleg. Co. 100 Mass. 156; Horton v. Ipswich, 12 Cush. 488.

*R. E. Wright & Son* and *Frank Reeder,* for defendant in error.—In Baker v. Fehr, 97 Pa. 70, this court declared that "what is negligence, and what is ordinary care, must be submitted to the jury if there be any dispute or reasonable doubt as to the facts claimed, to establish the alleged negligence, or as to the just inferences to be drawn therefrom. If, however, the facts be admitted or ascertained, it is the province of the court to declare the law thereon." See also Goshorn v. Smith, 92 Pa. 435; Gramlich v. Wurst, 86 Pa. 74, 27 Am. Rep. 684; Harrisburg v. Saylor, 87 Pa. 216; Pennsylvania R. Co. v. Fries, 87 Pa. 234; Nagle v. Allegheny Valley R. Co. 88 Pa. 35, 32 Am. Rep. 413; Jennings v. Pennsylvania R. Co. 93 Pa. 337; Fouhy v. Pennsylvania R. Co. 17 W. N. C. 177; Central R. Co. v. Feller, 4 W. N. C. 16; Pennsylvania R. Co. v. Werner, 89 Pa. 59.

Having for many years been in undisturbed and undisputed possession and enjoyment of the bridge, defendant's possession and maintenance must be presumed to be rightful, and could not be called in question by this plaintiff, in the absence of evidence against their rights. See Whart. Ev. §§ 1331, 1332; Entriken v. Brown, 32 Pa. 364; Robinson v. Hodgson, 73 Pa. 202; Coxe v. Deringer, 78 Pa. 271; Hoffman v. Bell, 61 Pa. 444.

It is contended by the plaintiff in error that the bridge was an obstruction of a public highway that the railroad company could not consent to. Railroads are only public highways for purposes of travel and commerce under the reasonable regulations of the company. Apart from that, the public has no right to use them as a highway. Mulherrin v. Delaware, L. & W. R. Co. 81 Pa. 366; Little Schuylkill Nav. R. & Coal Co. v. Norton, 24 Pa. 465, 64 Am. Dec. 672; Pittsburgh, Ft. W. & C. R. Co. v. Collins, 87 Pa. 405, 30 Am. Rep. 371; Boys v. Pennsylvania R. Co. 2 W. N. C. 198; Moore v. Pennsyl-

vania R. Co. 11 W. N. C. 310; Philadelphia & R. R. Co. v. Hummell, 44 Pa. 378, 84 Am. Dec. 457; Purdon's Digest, ed. 1872, § 41, p. 1221.

PER CURIAM:

There was no error in ordering this compulsory nonsuit and in refusing to take the same off.

The defendant was not guilty of any negligence such as would give the plaintiff a cause of action.

Judgment affirmed.